UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
———————————————————————————

XEROX CORPORATION,

                              Plaintiff,                         **COMPLAINT**

vs.

ROCKPRESS CORPORATION d/b/a
GRAPHICINK and                                  Case No. 6:22-cv-06361
ALEX LEUNG,

                              Defendants.
———————————————————————————

Plaintiff, for its complaint in this action, alleges as follows:

<u>**NATURE OF THE ACTION**</u>

1.     This is an action for damages incurred by plaintiff Xerox Corporation as a result of (a) defendant Rockpress Corporation d/b/a GraphicInk's ("Rockpress") material breach and default under an equipment finance lease agreement, an account modification agreement, and a promissory note; and (b) defendant Alex Leung's ("Leung") material breach and default under the account modification agreement and a personal and continuing guaranty of Rockpress's payment obligations to Xerox.

2.     Xerox's damages exceed $513,631.24, plus costs and attorneys' fees, which are recoverable under the express terms of the agreements, and which are continuing to accrue. In addition to monetary damages, Xerox seeks a judgment, pursuant to 28 U.S.C. § 2201, declaring that Xerox is entitled to immediately retake possession of the leased equipment.

<u>**JURISDICTION AND VENUE**</u>

3.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). There is complete diversity of citizenship amongst the parties, and the amount in controversy

exceeds the sum or value of $75,000, exclusive of extra-contractual interest and costs.

4.      Venue in the Western District of New York is proper pursuant to 28 U.S.C. § 1391. The parties contractually submitted to jurisdiction and venue in this Court.

**THE PARTIES**

5.      Xerox is a corporation organized under the laws of the State of New York with its principal place of business located at 201 Merritt 7, Norwalk, Connecticut 06851-1056.

6.      Rockpress is a corporation organized and existing under the laws of the State of California, with its principal place of business located in California.

7.      Upon information and belief, Leung is an individual who resides in the State of California, and was (or still is) the President of Rockpress.

**THE RELEVANT AGREEMENTS AND FACTUAL BACKGROUND**

**The Equipment Finance Lease**

8.      On or about November 1, 2016, Rockpress executed an equipment finance lease agreement (the "Finance Lease") pursuant to which Rockpress leased from Xerox (a) Xerox iGen5120C$^{TM}$ Color Printing Press (Serial No. M5A000530) and (b) Xerox iG5EFI$^{TM}$ (Serial No. M9B743282) (collectively, the "Leased Equipment"). A copy of the Finance Lease is attached hereto as Exhibit A and is incorporated herein.

9.      Pursuant to the Finance Lease, Rockpress agreed to make monthly minimum lease and maintenance payments of $12,328.84, consisting of $9,719.46 for the iGEN5120C Press and $2,609.38 for the iG5EFI.

10.     Pursuant to the Finance Lease, Rockpress further agreed to make payments to Xerox of certain print charges to be calculated based on the number of prints produced by the Leased Equipment during each month of the term of the Finance Lease.

2

11.    The Finance Lease specifies a 72-month lease term.

12.    The Finance Lease contains the following provision:

> **NON-CANCELABLE AGREEMENT.** THIS AGREEMENT CANNOT BE CANCELED OR TERMINATED EXCEPT AS EXPRESSLY PROVIDED HEREIN. YOUR OBLIGATION TO MAKE ALL PAYMENTS, AND TO PAY ANY OTHER AMOUNTS DUE OR TO BECOME DUE, IS ABSOLUTE AND UNCONDITIONAL AND NOT BE SUBJECT TO DELAY, REDUCTION, SET-OFF, DEFENSE, COUNTERCLAIM OR RECOUPMENT FOR ANY REASON WHATSOEVER, IRRESPECTIVE OF XEROX'S PERFORMANCE OF ITS OBLIGATIONS HEREUNDER. ANY CLAIM AGAINST XEROX MAY BE ASSERTED IN A SEPARATE ACTION AND SOLELY AGAINST XEROX.

13.    In the Finance Lease, Xerox disclaimed and Rockpress waived the implied warranties of non-infringement and fitness for a particular purpose.

14.    Xerox and Rockpress intended and agreed that the Finance Leases would be a "finance lease" as defined in Article 2A of the Uniform Commercial Code, and except as expressly provided in the Finance Lease, Rockpress waived all rights and remedies conferred upon a lessee in Article 2A of the Uniform Commercial Code.

15.    The Finance Lease provides that until such time as Rockpress exercises its option to purchase the Leased Equipment in accordance with the terms and conditions of the Finance Lease, Xerox retains title to and ownership of the Leased Equipment.

16.    The Finance Lease provides that Rockpress's payment of invoices issued pursuant to the Finance Lease must be received by Xerox within 30 days after the invoice date.

17.    The Finance Lease provides that Xerox is entitled to a late charge equal to the greater of 5% of the amount due or $25 for any payment not received by Xerox within 10 days of the due date for payment.

3

18.     The Finance Lease states that Rockpress will be in default if Xerox does not receive payment within 15 days after it is due or if Rockpress breaches any other obligation under the Finance Lease or any other agreement with Xerox.

19.     The Finance Lease provides that upon default, Xerox may, in addition to other remedies, remove the Leased Equipment at Rockpress's expense, cease providing maintenance services, and require immediate payment as liquidated damages, and not as a penalty, of (a) all amounts then due, plus interest from the due date until paid at the rate of 1.5% per month; (b) the remaining minimum/monthly payments throughout the remaining term of the Finance Lease, less any unearned finance, maintenance, and supply charges, as reflected in Xerox's books and records, and discounted at 4% per annum; (c) the applicable purchase option; and (d) all applicable taxes.

20.     The Finance Lease further states that upon default, Rockpress must also pay, in addition to the foregoing, all reasonable costs, including attorneys' fees, incurred by Xerox to enforce the Finance Lease.

21.     The Finance Lease states that it shall be governed by the laws of the State of New York, without regard to conflict-of-law principles.

22.     The Finance Lease states that in any action to enforce it, Rockpress and Xerox agree to the jurisdiction and venue of the federal and state courts in Monroe County, New York.

**The Account Modification Agreement**

23.     The Leased Equipment was delivered to a location designated by Rockpress in or around December 26, 2016, thereby commencing the term of the Finance Lease.

24.     Thereafter, Rockpress defaulted on its payment obligations under the Finance Lease, and Rockpress requested that Xerox modify the Finance Lease, forbear from exercising its rights and remedies under the Finance Lease, and modify the debt owed by Rockpress. This

resulted in the parties' execution of a (1) Modification Agreement, (2) Promissory Note, and (3) Guaranty, each of which are discussed in turn below.

25.     Xerox, Rockpress, and Leung executed and entered into an Account Modification Agreement, effective November 15, 2019 (the "Modification Agreement"), whereby Xerox agreed to modify Rockpress's debt under the Finance Lease and to forbear exercising its rights to collect that debt, subject to the terms and conditions set forth in the Modification Agreement. A copy of the Modification Agreement is attached hereto as Exhibit B and is incorporated herein.

26.     Pursuant to the Modification Agreement, Rockpress acknowledged that it had defaulted under the Finance Lease and further acknowledged the existence of its debt due and owing under the Finance Lease, "without defense, offset or counterclaim," in the amount specified in the Modification Agreement.

27.     Pursuant to the Modification Agreement, the parties agreed to modify certain specified terms of the Finance Lease, and they agreed that except for those portions of the Finance Lease expressly modified by the Modification Agreement, the Finance Lease remained the same and in full force and effect.

28.     The Finance Lease as modified by the Modification Agreement specifies a 72-month lease term commencing on November 1, 2019 and expiring on October 31, 2025.

29.     Pursuant to the Finance Lease as modified by the Modification Agreement, Rockpress agreed to make monthly minimum payments as follows: (a) for the iGen5120C Printing Press, $3,238.73 for months 1-18, and $5,161.30 for months 19-72; and (b) for the iG5EFI, $1,067.14 for months 1-18, and $1,700.60 for months 19-72.

30.     The Modification Agreement did not modify the maintenance/print charges to be paid by Rockpress, and thus, those charges were to remain the same as specified in the Finance Lease throughout the modified term of that agreement.

31.     Pursuant to the Modification Agreement, the parties agreed that Rockpress, as debtor, "shall execute and deliver to Xerox a Promissory Note in the amount of $78,824.48 in the form required by Xerox" and as further detailed in the Modification Agreement.

32.     Pursuant to the Modification Agreement, Leung, referred to in the Modification Agreement as "Guarantor," reaffirmed and confirmed all "covenants, obligations, agreements, waivers, and liabilities set forth in the Guaranty" that Leung executed on or about November 15, 2019.

33.     Pursuant to the Modification Agreement, the parties agreed that a default under the Finance Lease, as modified, constitutes a default under the Modification Agreement and the Promissory Note.

34.     As part of the Modification Agreement, the parties agreed that notwithstanding any agreement to forbear exercising its rights, "upon the occurrence of an Event of Default, Xerox shall immediately be entitled to pursue its rights and remedies under [the Finance Lease, as modified by the Modification Agreement] and applicable law without notice."

35.     The Modification Agreement defines an "Event of Default" as "any event or circumstance that is continuing and that, with the giving of notice, or passage of time, or both, would constitute a default, breach or an event of default under any of the" Finance Lease, the Modification Agreement, or the Promissory Note.

36.     The Modification Agreement provides that the Finance Lease as modified by the Modification Agreement constitutes "the entire understanding and agreement" of Rockpress with

respect to the amount owed under the Finance Lease, that those documents "supersede all prior representations, warranties, agreements and understandings," and that no provision of those documents "may be changed, discharged, supplemented, terminated or waived except in a writing signed" by Xerox and Rockpress.

37.    The Modification Agreement provides that any legal action or proceeding with respect to the Finance Lease and/or Modification Agreement "shall be brought exclusively" in the courts of the State of New York located in Monroe County or in a United States District Court in New York and that the parties accept the jurisdiction of those courts.

38.    The Modification Agreement states: "The laws of the State of New York (without giving effect to its conflicts of laws principles) shall govern all matters arising out of, in connection with or relating to" the Modification Agreement and Finance Lease.

**The Promissory Note**

39.    On or about November 15, 2019, Rockpress executed a Promissory Note payable to Xerox (the "Promissory Note"). A copy of the Promissory Note is attached hereto as Exhibit C and is incorporated herein.

40.    The Promissory Note addresses a principal amount of $78,824.48, which is a portion of the unpaid and past due invoice amounts owed to Xerox by Rockpress pursuant to the Finance Lease, as further detailed in the Modification Agreement.

41.    Pursuant to the Promissory Note, Rockpress agreed to make monthly payments of $1,655.46 for months 1-60 of the term of the Promissory Note, with payments due on the 1st day of each month beginning December 1, 2019.

7

42.     The Promissory Note provides that if payment is not received by Xerox within ten (10) days after its due date, Rockpress shall pay an additional charge equal to 5% of the delinquent payment or the highest additional payment allowed by law, whichever is greater.

43.     The Promissory Note states that any one of the following constitutes an "Event of Default" under the Promissory Note: (a) Xerox not receiving payment of principal or interest when due where such failure continues for two days; (b) Rockpress failing to observe or perform any of the obligations or covenants set forth in any agreement with Xerox; (c) a death, dissolution, termination of existence, insolvency, business failure, appointment of receiver, assignment for the benefit of creditors by, or the commencement of any proceeding under any bankruptcy for insolvency laws of, by or against Rockpress or any guarantor or surety for Rockpress; or (d) an "Event of Default" as defined in the Modification Agreement.

44.     The Promissory Note provides that upon an "Event of Default," Xerox shall have the option to declare the entire amount of principal and interest under the Promissory Note immediately due and payable without notice or demand, and that Xerox may exercise any of its rights under the Promissory Note, the Modification Agreement, and the Finance Lease.

45.     Further, the Promissory Note states that Rockpress, upon an "Event of Default," shall pay interest on the outstanding principal balance of the Promissory Note at the rate of fifteen percent (15.00%) per annum or the highest rate allowed under applicable law, whichever is higher.

46.     In addition, the Promissory Note states that Rockpress shall pay all reasonable attorneys' fees and costs incurred by Xerox in enforcing the Promissory Note.

47.     The Promissory Note states that it "shall be governed by, and construed in accordance with, the laws of the State of New York without regard to principles of conflicts of laws."

48.     The Promissory Note provides that any legal action or proceeding with respect to the Promissory Note may be brought in federal or state courts located within the State of New York.

**The Guaranty**

49.     On November 15, 2019, Leung executed a personal and continuing guaranty (the "Guaranty"). A copy of the Guaranty is attached hereto as Exhibit D and is incorporated herein.

50.     In the Guaranty, Leung acknowledged that he was executing the Guaranty to induce Xerox to enter into the Modification Agreement.

51.     Pursuant to the Guaranty, Leung expressly agreed to "absolutely and unconditionally" guarantee to Xerox "the full and prompt payment when due, of all amounts owed by [Rockpress] to Xerox," including all amounts due or to become due under the Modification Agreement, the Promissory Note, and "all sale agreements and leases now or hereafter between Xerox and [Rockpress], including, without limitation" the Finance Lease.

52.     Pursuant to the Guaranty, Leung agreed to pay Xerox's "costs of collection" with respect to the Finance Lease, Modification Agreement, and Promissory Note, "including attorneys' fees and expenses."

53.     The parties agreed that the Guaranty "is an absolute, unconditional and continuing guaranty of payment and performance" under the Finance Lease, Modification Agreement, and Promissory Note.

54.     The Guaranty provides that Leung "shall pay or reimburse Xerox for all costs and expenses (including reasonable attorneys' fees and legal expenses) incurred by Xerox in connection with the protection, defense or enforcement of this Guaranty in any litigation."

55.     Pursuant to the Guaranty, Leung "waive[d] any and all defenses, claims, setoffs, and discharges of [Rockpress], or any other obligor, pertaining to any" payment obligations guaranteed under the Guaranty.

56.     Pursuant to the Guaranty, Leung waived any right to "presentment, demand for payment, notice of dishonor or nonpayment, and protest of any instrument evidencing" payment obligations guaranteed under the Guaranty.

57.     The Guaranty states that "Xerox shall not be required first to resort for payment" of the obligations guaranteed by the Guaranty from Rockpress "or other persons, or their properties, or first to enforce, realize upon or exhaust any collateral security for any" of the payments guaranteed before enforcing the Guaranty.

58.     The Guaranty states that it "shall be enforceable against each person signing this Guaranty" and that "[a]ll agreements and promises herein shall be construed to be, and are hereby declared to be, joint and several in each and every particular and shall be fully binding upon and enforceable against either, any or all parties signing as Guarantor," which include Leung.

59.     The Guaranty states that it "shall be governed by, and construed in accordance with, the laws of the State of New York without regard to principles of conflicts of law."

60.     The Guaranty states that "[a]ny legal action or proceeding with respect to this Guaranty may be brought in any United States District Court located in the state of New York" and that Leung as the Guarantor "hereby accepts … the jurisdiction of the aforesaid courts."

**First Amended Modification Agreement**

61.     Rockpress then defaulted on its payment obligations under the Modification Agreement, and Rockpress requested that Xerox modify the Modification Agreement, forbear from exercising its rights and remedies under the Modification Agreement, and modify the debt

owed by Rockpress. This resulted in the parties' execution of a (1) First Amendment to Account Modification Agreement, (2) Amended and Restated Promissory Note, and (3) Amended and Restated Personal Guaranty, each of which are discussed in turn below.

62.     Xerox, Rockpress, and Leung executed and entered into a First Amendment to Account Modification Agreement, effective June 29, 2021 (the "First Amended Modification Agreement"), whereby Xerox agreed to modify Rockpress's debt under the Modification Agreement and to forbear exercising its rights to collect that debt, subject to the terms and conditions set forth in the First Amended Modification Agreement. A copy of the First Amended Modification Agreement is attached hereto as Exhibit E and is incorporated herein.

63.     Pursuant to the First Amended Modification Agreement, the parties agreed to modify certain specified terms of the Modification Agreement, and they agreed that except for those portions of the Modification Agreement expressly modified by the First Amended Modification Agreement, the Modification Agreement remained the same and in full force and effect.

64.     The Modification Agreement as modified by the First Amended Modification Agreement specifies a 56-month lease term commencing on July 1, 2021 and expiring on February 28, 2026.

65.     Pursuant to the Modification Agreement as modified by the First Amended Modification Agreement, Rockpress agreed to make monthly minimum payments as follows: (a) for the iGEN5120C, $0.00 for months 1-3, $1,851.74 for months 4-9, and $5,829.25 for months 10-56; and (b) for the iG5EFI, $0.00 for months 1-3, $610.13 for months 4-9, and $1,920.69 for months 10-56.

66.     The First Amended Modification Agreement did not modify the maintenance/print charges to be paid by Rockpress, and thus, those charges were to remain as specified in the Modification Agreement throughout the modified term of that agreement.

67.     Pursuant to the First Amended Modification Agreement, the parties agreed that Rockpress, as debtor, "shall execute and deliver to Xerox an Amended and Restated Promissory Note in the amount of $109,678.35 in the form required by Xerox" and as further detailed in the First Amended Modification Agreement.

68.     Pursuant to the First Amended Modification Agreement, Leung, referred to in the First Amended Modification Agreement as "Guarantor," reaffirmed and confirmed all "covenants contained in the Modification Agreement," and confirmed that the Amended Promissory Note "shall be included as Guaranteed Obligations under the Personal Guaranty executed by Guarantor in favor of Xerox."

69.     Pursuant to the First Amended Modification Agreement, the parties agreed that a default under the Finance Lease, as modified, constitutes a default under the First Amended Modification Agreement and the Amended Promissory Note.

70.     As part of the Modification Agreement, and as reaffirmed by the First Amended Modification Agreement, the parties agreed that notwithstanding any agreement to forbear exercising its rights, "upon the occurrence of an Event of Default, Xerox shall immediately be entitled to pursue its rights and remedies under [the Finance Lease, as modified by the Modification Agreement] and applicable law without notice."

71.     The First Amended Modification Agreement reaffirmed the Modification Agreement's definition of an "Event of Default" as "any event or circumstance that is continuing and that, with the giving of notice, or passage of time, or both, would constitute a default, breach

or an event of default under any of the" Finance Lease, the Modification Agreement, or the Promissory Note.

72.     The First Amended Modification Agreement reaffirmed that the Finance Lease as modified by the Modification Agreements constitutes "the entire understanding and agreement" of Rockpress with respect to the amount owed under the Finance Lease, that those documents "supersede all prior representations, warranties, agreements, and understandings," and that no provision of those documents "may be changed, discharged, supplemented, terminated or waived except in a writing signed" by Xerox and Rockpress.

73.     The First Amended Modification Agreement reaffirmed that any legal action or proceeding with respect to the Finance Lease and/or Modification Agreement "shall be brought exclusively" in the courts of the State of New York located in Monroe County or in a United States District Court in New York and that the parties accept the jurisdiction of those courts.

74.     The First Amended Modification Agreement reaffirmed that: "The laws of the State of New York (without giving effect to its conflicts of laws principles) shall govern all matters arising out of, in connection with or relating to" the Modification Agreement and Finance Lease.

**Amended Promissory Note**

75.     On or about June 29, 2021, Rockpress executed an Amended and Restated Promissory Note payable to Xerox (the "Amended Promissory Note"). A copy of the Amended Promissory Note is attached hereto as Exhibit F and is incorporated herein.

76.     The Amended Promissory Note addresses a principal amount of $109,678.35, which is a portion of the unpaid and past due invoice amounts owed to Xerox by Rockpress pursuant to the Finance Lease, as further detailed in the Modification Agreement and First Amended Modification Agreement.

77.     Pursuant to the Amended Promissory Note, Rockpress agreed to make monthly payments of $818.02 for months 1-9 of the term of the Amended Promissory Note, and to make payments of $2,775.04 for months 10-56 of the term of the Amended Promissory Note, with payments due on the 1st day of each month beginning August 1, 2021.

78.     The Amended Promissory Note provides that if payment is not received by Xerox within ten (10) days after its due date, Rockpress shall pay an additional charge equal to 5% of the delinquent payment or the highest additional payment allowed by law, whichever is greater.

79.     The Amended Promissory Note states that any one of the following constitutes an "Event of Default under the Amended Promissory Note: (a) Xerox not receiving payment of principal or interest when due where such failure continues for two days; (b) Rockpress failing to observe or perform any of the obligations or covenants set forth in any agreement with Xerox; (c) a death, dissolution, termination of existence, insolvency, business failure, appointment of receiver, assignment for the benefit of creditors by, or the commencement of any proceeding under any bankruptcy for insolvency laws of, by or against Rockpress or any guarantor or surety for Rockpress; or (d) an "Event of Default" as defined in the Modification Agreement.

80.     The Amended Promissory Note provides that upon an "Event of Default," Xerox shall have the option to declare the entire amount of principal and interest under the Amended Promissory Note immediately due and payable without notice or demand, and that Xerox may exercise any of its rights under the Amended Promissory Note, the First Amended Modification Agreement, and the Finance Lease.

81.     Further, the Amended Promissory Note states that Rockpress, upon an "Event of Default," shall pay interest on the outstanding principal balance of the Amended Promissory Note

at the rate of fifteen percent (15.00%) per annum or the highest rate allowed under applicable law, whichever is higher.

82.    In addition, the Amended Promissory Note states that Rockpress shall pay all reasonable attorneys' fees and costs incurred by Xerox in enforcing the Amended Promissory Note.

83.    The Amended Promissory Note states that it "shall be governed by, and construed in accordance with, the laws of the State of New York without regard to principles of conflicts of laws."

84.    The Amended Promissory Note provides that any legal action or proceeding with respect to the Promissory Note may be brought in federal or state courts located within the State of New York.

**Amended Guaranty**

85.    On June 29, 2021, Leung executed a personal and continuing guaranty (the "Amended Guaranty"). A copy of the Amended Guaranty is attached hereto as Exhibit G and is incorporated herein.

86.    In the Amended Guaranty, Leung acknowledged that he was executing the Amended Guaranty to induce Xerox to enter into the First Amended Modification Agreement.

87.    Pursuant to the Amended Guaranty, Leung expressly agreed to "absolutely and unconditionally" guarantee to Xerox "the full and prompt payment when due, of all amounts owed by [Rockpress] to Xerox," including all amounts due or to become due under the First Amended Modification Agreement, the Amended Promissory Note, and "all sale agreements and leases now or hereafter between Xerox and [Rockpress], including, without limitation" the Finance Lease.

88.     Pursuant to the Amended Guaranty, Leung agreed to pay Xerox's "costs of collection" with respect to the Finance Lease, First Amended Modification Agreement, and Amended Promissory Note, "including attorneys' fees and expenses."

89.     The parties agreed that the Amended Guaranty "is an absolute, unconditional and continuing guaranty of payment and performance" under the Finance Lease, First Amended Modification Agreement, and Amended Promissory Note.

90.     The Amended Guaranty provides that Leung "shall pay or reimburse Xerox for all costs and expenses (including reasonable attorneys' fees and legal expenses) incurred by Xerox in connection with the protection, defense or enforcement of this Guaranty in any litigation."

91.     Pursuant to the Amended Guaranty, Leung "waive[d] any and all defenses, claims, setoffs, and discharges of [Rockpress], or any other obligor, pertaining to any" payment obligations guaranteed under the Amended Guaranty.

92.     Pursuant to the Amended Guaranty, Leung waived any right to "presentment, demand for payment, notice of dishonor or nonpayment, and protest of any instrument evidencing" payment obligations guaranteed under the Amended Guaranty.

93.     The Amended Guaranty states that "Xerox shall not be required first to resort for payment" of the obligations guaranteed by the Amended Guaranty from Rockpress "or other persons, or their properties, or first to enforce, realize upon or exhaust any collateral security for any" of the payments guaranteed before enforcing the Amended Guaranty.

94.     The Amended Guaranty states that it "shall be enforceable against each person signing this Guaranty" and that "[a]ll agreements and promises herein shall be construed to be, and are hereby declared to be, joint and several in each and every particular and shall be fully

binding upon and enforceable against either, any or all parties signing as Guarantor," which includes Leung.

95.     The Amended Guaranty states that it "shall be governed by, and construed in accordance with, the laws of the State of New York without regard to principles of conflicts of law."

96.     The Amended Guaranty states that "[a]ny legal action or proceeding with respect to this Guaranty may be brought in any United States District Court located in the state of New York" and that Leung as the Guarantor "hereby accepts … the jurisdiction of the aforesaid courts."

### COUNT I

### BREACH OF THE FINANCE LEASE AS MODIFIED BY THE FIRST AMENDED MODIFICATION AGREEMENT (AGAINST ROCKPRESS CORPORATION AND ALEX LEUNG)

97.     Xerox repeats and realleges the allegations set forth in paragraphs 1 through 96 above as if fully set forth and repeated herein.

98.     The Finance Lease as modified by the First Amended Modification Agreement is a valid and binding contract entered into upon the mutual agreement and assent of Xerox and Rockpress.

99.     The Leased Equipment was delivered and/or installed at a location designated by Rockpress.

100.     Xerox has not materially breached any of its obligations under the Finance Lease, as modified by the First Amended Modification Agreement.

101.     Rockpress received the benefits to which it was entitled under the Finance Lease, as modified, including but not limited to the use of the Leased Equipment and all corresponding equipment, supplies, and services.

102.    Xerox submitted to Rockpress invoices in accordance with the provisions of the Finance Lease, as modified.

103.    Rockpress failed to make its required payments of invoices issued under the Finance Lease, as modified, and materially breached and defaulted on its obligations under the terms of the Finance Lease and First Amended Modification Agreement.

104.    Rockpress failed to make its required payments under the Amended Promissory Note, and materially breached and defaulted on its obligations under the terms of the Amended Promissory Note.

105.    Rockpress's failure to make its required payments under the Finance Lease, the First Amended Modification Agreement, and the Amended Promissory Note constitute a material breach and default under the Finance Lease and an Event of Default under the First Amended Modification Agreement.

106.    Pursuant to the First Amended Modification Agreement, Leung affirmed that he is a Guarantor of Rockpress's payment obligations to Xerox.

107.    Despite Xerox's notifications, demands, and opportunities for the defendants to cure the material breach and default under the Finance Lease, First Amended Modification Agreement, and Amended Promissory Note, neither Rockpress, nor Leung has cured the material breach and default.

108.    Xerox is entitled to a judgment against Rockpress and Leung, awarding Xerox damages arising from Rockpress's material breach and default in accordance with the provisions of the Finance Lease as modified by the First Amended Modification Agreement.

109. To date, Xerox's damages recoverable under the Finance Lease as modified by the First Amended Modification Agreement exceed $513,631.24, plus Xerox's costs and attorneys' fees incurred in connection with this action, which are continuing to accrue.

## COUNT II

### BREACH OF THE AMENDED PROMISSORY NOTE
### (AGAINST ROCKPRESS CORPORATION)

110. Xerox repeats and realleges the allegations set forth in paragraphs 1 through 109 above as if fully set forth and repeated herein.

111. Rockpress has failed to make required payments of monthly amounts due pursuant to the Amended Promissory Note.

112. Rockpress's failure to make required monthly payments is an "Event of Default" as defined by the Amended Promissory Note and otherwise constitutes a material breach and default under the Amended Promissory Note.

113. Despite Xerox's notifications, demands, and opportunities for Rockpress to cure the material breach, default, and Event of Default under the Amended Promissory Note, Rockpress has not cured its material breach, default, and Event of Default.

114. Xerox is entitled to a judgment against Rockpress awarding Xerox damages arising from Rockpress's material breach, default, and the corresponding Event of Default, in accordance with the provisions of the Amended Promissory Note.

115. To date, Xerox's damages recoverable under the Amended Promissory Note exceed $115,257.43, plus interest measured from the time of the breach and Xerox's costs and attorneys' fees incurred in connection with this action, which are continuing to accrue.

## COUNT III

### BREACH OF THE AMENDED GUARANTY
### (AGAINST ALEX LEUNG)

116.    Xerox repeats and realleges the allegations set forth in paragraphs 1 through 115 above as if fully set forth and repeated herein.

117.    The Amended Guaranty is a valid and binding contract entered into upon the mutual agreement and assent of Xerox and Leung.

118.    Since Xerox and Leung executed the Amended Guaranty, the Amended Guaranty has been in full force and effect, and Xerox has not materially breached any of its obligations under the Amended Guaranty.

119.    Rockpress has failed to make payments and otherwise has failed to satisfy its obligations to Xerox, including but not limited to Rockpress's material breach and default on its payment obligations under the Finance Lease, as modified by the First Amended Modification Agreement, and the Amended Promissory Note.

120.    Pursuant to the Amended Guaranty, Leung is personally liable for all outstanding obligations owed by Rockpress to Xerox, including but not limited to the outstanding obligations existing under the Finance Lease, First Amended Modification Agreement, and Amended Promissory Note.

121.    Leung has not paid any of the outstanding obligations owed by Rockpress to Xerox, and thus, Leung has materially breached and defaulted on his obligations under the Amended Guaranty.

122.    Xerox is entitled to a judgment against Leung, awarding Xerox damages arising from Leung's material breach and default in accordance with the provisions of the Amended Guaranty.

123.    To date, Xerox's damages arising from Leung's material breach and default under the Amended Guaranty exceed $513,631.24, plus Xerox's costs and attorney's fees incurred in connection with this action, which are continuing to accrue.

**COUNT IV**

**DECLARATORY JUDGMENT**
**(AGAINST ROCKPRESS CORPORATION)**

124.    Xerox repeats and realleges the allegations set forth in paragraphs 1 through 123 above as if fully set forth and repeated herein.

125.    Xerox retains title to and ownership of the Leased Equipment.

126.    Upon Rockpress's material breach and default on its obligations under the Finance Lease as modified by the First Amended Modification Agreement, Rockpress no longer had any legal right to retain possession of or to prevent Xerox from taking possession of the Leased Equipment.

127.    Accordingly, pursuant to 28 U.S.C. § 2201, in addition to an award of money damages, Xerox also is entitled to a judgment declaring that:

a.  Xerox is the lawful owner of the Leased Equipment;

b.  Rockpress's right to possession of the Leased Equipment is limited by the terms of the Finance Lease as modified by the First Amended Modification Agreement;

c.  Rockpress has materially breached and defaulted on its obligations under the Finance Lease as modified by the First Amended Modification Agreement;

d.  Rockpress has no current right to possess or retain the Leased Equipment; and

e.  Xerox is entitled to immediately retake possession of the Leased Equipment.

WHEREFORE, Xerox is entitled to and hereby demands entry of judgment as follows:

(a)     On Count I, judgment against Rockpress and Leung awarding Xerox damages in accordance with the terms of the Finance Lease and First Amended Modification Agreement, which exceed $513,631.24, plus Xerox's costs and attorneys' fees incurred in connection with this action, which are continuing to accrue;

(b)     On Count II, judgment against Rockpress awarding Xerox damages in accordance with the terms of the Amended Promissory Note, which exceed $115,257.43, plus interest measured from the time of the breach and Xerox's costs and attorneys' fees incurred in connection with this action, which are continuing to accrue;

(c)     On Count III, judgment against Leung awarding Xerox damages in accordance with the terms of the Amended Guaranty, which exceed $513,631.24, plus Xerox's costs and attorneys' fees incurred in connection with this action, which are continuing to accrue;

(d)     On Count IV, awarding Xerox a declaratory judgment as outlined above, including a declaration that Xerox is the lawful owner of and is entitled to immediately retake possession of (i) Xerox iGen5120C™ Color Printing Press (Serial No. M5A000530) and (ii) Xerox iG5EFI™ (Serial No. M9B743282); and

(e)     Granting Xerox such other and further relief as the Court deems just and proper.

Dated:  August 26, 2022          **WARD GREENBERG HELLER & REIDY LLP**

                         s/Joshua M. Agins
                         Joshua M. Agins
                         Christine M. Naassana
                         1800 Bausch & Lomb Place
                         Rochester, New York 14604
                         (585) 454-0700
                         jagins@wardgreenberg.com
                         cnaassana@wardgreenberg.com

                         *Attorneys for plaintiff Xerox Corporation*